# UNITED STATES DISTRICT COURT
## Northern District of California

| | |
|---|---|
| CITY OF OAKLAND,<br><br>        Plaintiff,<br>   v.<br>SSA TERMINALS, LLC., et al.,<br><br>        Defendants.<br>_____/ | No. C 11-1446 YGR (MEJ)<br><br>**ORDER ON JOINT DISCOVERY DISPUTE REGARDING SCOPE OF PROTECTIVE ORDER**<br><br>**[Docket Nos. 62, 68, 69, 76, 85, 87, 89]** |

      The background of this discovery dispute is as follows. On February 3, 2012, the parties filed a joint letter regarding the scope of a proposed stipulated protective order. Dkt. No. 62. Defendants argued that Plaintiff's in-house counsel should not be permitted to review documents designated as "Attorneys' Eyes Only" (AEO) because they are involved in lease negotiations and/or decision-making for Plaintiff and disclosure of the AEO documents would provide Plaintiff with an unfair advantage in the parties' next lease negotiations. Plaintiff, on the other hand, argued that its in-house counsel require access to any AEO documents because their participation is essential to Plaintiff. Without such access, Defendants will have effectively disqualified Plaintiff's in-house counsel from the trial team.

      After considering the parties' joint letter, the Court ordered both Plaintiff and Defendants to submit further briefing by way of separate supplemental letters. Dkt. No. 65. A review of these letters led the Court to order the parties to meet and confer for the purpose of stipulating to an exclusion order with respect to the AEO documents. Dkt. No. 70. The parties were unable to reach a stipulation. Dkt. No. 76. On March 28, the Court ordered Defendants to submit the documents at issue for the Court to review in camera. Dkt. No. 84. In connection with the submission of these documents, both parties provided declarations explaining their positions in further detail. The Court has conducted an in camera review of the AEO documents and considered the parties' letter briefs and declarations. For the foregoing reasons, the Court finds that Plaintiff's in-house counsel may

have access to the AEO documents.

The first issue is whether Plaintiff or Defendants have the burden of persuasion in this dispute. Neither of the parties specifically address this question in their arguments. The Court's analysis, however, starts here. Parties seeking discovery are entitled to all information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A producing party may ask the Court to minimize its burden to turn over discoverable information by ordering "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed in only a specified way." Fed. R. Civ. P. 26(c). In this dispute, the parties are attempting to reach an agreement on a protective order to govern discovery in this matter.[1] As part of this protective order, Defendants seek to limit the information they must produce. "The party seeking a protective order has the burden of showing that the protection is warranted." *Barnes and Noble, Inc. v. LSI Corp.*, 2012 WL 601806, at *1 (N.D. Cal. Feb. 23, 2012) (citing Fed. R. Civ. P. 26(c)). Accordingly, the Court finds that Defendants bear the burden of showing that Plaintiff's in-house counsel should not have access to the AEO documents. Based on this burden, the Court ordered Defendants to submit a declaration specifically explaining why the documents it submitted for in camera review should be protected. Dkt. No. 84.

Defendants also have another burden. One of the reasons the parties did not reach a stipulation on this issue is because Defendants could not agree to exclude the AEO documents from discovery or trial. Dkt. No. 76. This means that Defendants, in order to shield these documents from Plaintiff's in-house counsel, plan to ask this Court to seal the documents during the trial. As the Court explained in its previous order requiring an in camera review, any request from Defendants would consequently have to comply with this District's strict standard for sealing documents from the public. Dkt. No. 84. Thus, Defendants also had the burden to meet the requirements of Civil Local Rule 79-5 as well as Ninth Circuit case law and ensure that their request for protection was narrowly

---

[1] Because these proceedings are not officially related to the parties' case currently pending before the Federal Maritime Commission (FMC), the protective order in the FMC action has no binding effect on this matter.

2

tailored. *Id.*

Defendants have failed to meet both of the above burdens. The Court ordered Defendants to "provide a declaration that *specifically explains* why each document or each redaction in a document should not be available to Plaintiff's in-house counsel." *Id.* Rather than providing such a specific explanation, Defendants' declaration is filled with nothing more than conclusory statements. For instance, in describing why the first category of AEO documents should not be available to Plaintiff's in-house counsel, Defendants' Vice President states the following:

> Disclosure of this document to the Port would be extremely prejudicial and harmful. It would put SSA at a significant disadvantage in future negotiations with the Port, since it would give the Port an insider's knowledge of SSA finances, operational effectiveness, methods of achieving profitability and business strategies, as if the Port were a member of the LLC. To my knowledge, no other terminal operator in the Port has disclosed or would disclose any document to [the] Port which was prepared as an internal analysis of a terminal's revenue, container volumes and profitability by vessel voyage.

Declaration of Jon E. Rosselle ¶ 4. Similar to their letter briefs, this declaration only provides the Court with Defendants' unsubstantiated conclusion that Plaintiff will gain an advantage in future negotiations because it has reviewed some of Defendants' financial information. It does not explain how Plaintiff's knowledge of this information would specifically affect the negotiations scheduled for 2013 or 2017.[2] Nor does it provide any further explanation as to how exactly this "insider's knowledge" would be "extremely prejudicial and harmful" to Defendants. The same is true for the two other categories of AEO documents. Defendants' Vice President continues to provide

---

[2] The Court notes that pursuant to the parties' agreement, the lease negotiations scheduled for 2013 will initially be conducted between Plaintiff and Defendants. Declaration of Richard T. White, Ex. A. If the parties are unable to reach an agreement on the fair market value of the lease within 60 days, then the value will be determined by real estate appraisers. *Id.* However, from the limited information available to the Court with respect to the parties' agreement, it appears that even when the parties are negotiating between themselves, they are doing so in good faith to determine the fair market value of the lease. *See id.* ("In determining fair market value in the future, due account shall be given to changes in the Port's Tariff rates for water, land and improvements, other Port leases and agreements negotiated at or about the date or dates for which fair market value is being determined, and changes in the Consumer Price Index."). If that is the case, then Defendants' financial information seems relevant in helping the parties figure out what the fair market value should be.

3

conclusory statements that fail to help this Court understand why these documents should be withheld from Plaintiff's in-house counsel. *See* Declaration of Jon E. Rosselle ¶¶ 6 and 8 ("[These documents] are extremely sensitive. They represent SSA's negotiating strategies. No terminal operator would provide this information to a port because it would give a port a significant advantage when it comes to negotiating for rent increases, lease renewals or any issue arising from that relationship."); ("[These documents] are extremely sensitive commercial documents. These agreements and schedules include terms, conditions and rates, the disclosure of which to the Port would be prejudicial to any negotiations that SSA would have with the Port. They, like other documents, would give the Port an insider's look at SSA's financial condition, its relationships with its customers and its business strategies."). The Court in *Foltz v. State Farm Mutual Automobile Insurance Company* explained that such broad statements are not enough to obtain a protective order:

> A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted. *[S]ee also Beckman*, 966 F.2d at 476 ("[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D.Md. 1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

331 F.3d 1122, 1130 (9th Cir. 2003) (some internal citations omitted). Based on the above, the Court finds that Defendants have failed to meet their burden and specifically show why AEO documents must be withheld from Plaintiff's in-house counsel.[3]

Defendants have also failed to comply with this Court's requirement that any request to protect documents be narrowly tailored. For the Court's in camera review, Defendants submitted a completely full three-inch binder containing 23 sets of documents. It appears that none of the documents have been redacted; instead, Defendants are essentially seeking to withhold from Plaintiff's in-house counsel — and eventually seal from the public — entire documents, regardless of

---

[3] It is telling that the supporting declaration submitted by Defendants for the Court's in camera review contains so few — if any — concrete examples or specific demonstrations of fact that it could have easily been publicly filed on ECF.

4

whether any of the information is confidential or sealable.  For example, Exhibit 15 appears to be three versions of a 57-page agreement between Defendants and a customer.  Many of these pages, such as the table of contents and other introductory or boilerplate pages, do not appear to contain any sensitive or confidential information.  Even when there is some sensitive and confidential information, this information is not explicitly redacted.  Defendants have instead marked each of the three 50-plus page agreements as entirely consisting of AEO material.  This underscores that Defendants have not narrowly tailored their request to "seek sealing of only sealable material" as required by Civil Local Rule 79-5(a).  *See also Foltz*, 331 F.3d at 1122; *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 310 (N.D. Cal. 2005).  Even though it is conceivable that many of the documents submitted by Defendants may be properly sealed, because they have not made a good faith effort to narrowly tailor their request, or specifically explain the need for secrecy in a document that may eventually be used at a public trial, the Court finds that Defendants' request is improper.

For the foregoing reasons, Defendants have failed to make the required showing for a protective order and have not narrowly tailored their request.  Due to this failing, the Court does not need to address the other arguments made by the parties in their letter briefs.  It concludes that Defendants' request to limit access to Plaintiff's in-house counsel is DENIED.[4]

**IT IS SO ORDERED.**

Dated: April 23, 2012

                                                        Maria-Elena James
Chief United States Magistrate Judge

---

[4] Defendants' principle argument is that this dispute is similar to the one in *Brown Bag Software v. Symantec Corporation*, where the Ninth Circuit upheld the District Court's decision to issue a protective order which shielded the plaintiff's in-house counsel from personal knowledge of the defendant's trade secrets.  960 F.2d 1465 (9th Cir. 1992).  Even if Defendants had met their burden under FRCP 26(c), the decision in *Brown Bag* is distinguishable because it dealt with two competitors in a trade secret case and in-house counsel were involved in "competitive decisionmaking." *Id.* at 1470.  Here, while Plaintiff and Defendants are somewhat adversarial due to their status as landlord/tenant, they are not direct competitors in the technology sector in which in-house counsel are materially involved in "competitive decisionmaking."